# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

Filed: May 24, 2019

```
* * * * * * * * * * * * * * *
LINDA KIMBROUGH, on behalf of G.A.,   *
                                      *   No. 16-170V
              Petitioner,             *
                                      *   Special Master Sanders
v.                                    *
                                      *   Motion to Dismiss; Influenza ("flu")
SECRETARY OF HEALTH                   *   Vaccine; Six Month Requirement
AND HUMAN SERVICES,                   *
                                      *
              Respondent.             *
* * * * * * * * * * * * * * *
```

*Clifford John Shoemaker*, Shoemaker, Gentry & Knickelbein, Vienna, VA, for Petitioner.
*Debra A. Filteau Begley*, United States Department of Justice, Washington, D.C., for Respondent.

## DECISION[1]

On February 4, 2016, Linda Kimbrough ("Petitioner") filed a petition on behalf of G.A. pursuant to the National Vaccine Injury Compensation Program ("Program" or "Vaccine Program").[2] Petitioner alleges that the influenza ("flu") vaccine G.A. received in her right leg on December 16, 2014, caused her to "experience[] an injection site reaction that resulted in pain, swelling, itching, erythema,[3] induration[4] and ecchymosis,[5] as well as a limp . . . [and] scarring[.]" Am. Pet. at 3–4, ECF No. 71.

Respondent filed a motion to dismiss Petitioner's claim on December 20, 2017. Resp't's Mot. to Dismiss, ECF No. 51. Petitioner filed a response on February 20, 2018. Pet'r's Response,

---

[1] This decision shall be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be deleted from public access.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act," "the Act," or "the Program").

[3] Erythema is "redness of the skin produced by congestion of the capillaries." *Dorland's Illustrated Medical Dictionary* 643 (32nd ed. 2012) [hereinafter "*Dorland's*"].

[4] Induration is defined as "the quality of being hard; . . . the process of becoming hard; . . . an abnormally hard spot or place." *Dorland's* at 933.

[5] Ecchymosis is "a small hemorrhagic spot, larger than a petechia, in the skin or mucous membrane forming a nonelevated, rounded or irregular, blue or purplish patch." *Dorland's* at 588.

ECF No. 54. Respondent filed a reply on February 28, 2018. Resp't's Reply, ECF No. 55. This matter is now ripe for consideration. For the reasons stated below, the undersigned **GRANTS** Respondent's motion.

## I.    Procedural History

Petitioner filed her petition on February 4, 2016, Pet., ECF No. 1, and the case was assigned to Special Master Hamilton-Fieldman. *See* ECF No. 5.   Over the next two months, Petitioner filed numerous exhibits consisting of medical records and multiple notices from medical providers stating that they did not have any records pertaining to G.A. *See* Pet'r's Exs. 1–13, ECF Nos. 10, 12, 13. Petitioner filed her first statement of completion on April 29, 2016. ECF No. 14.

On May 20, 2016, Respondent filed a status report noting numerous outstanding medical records and stating that Petitioner had filed no "medical records documenting six months of residual symptoms[.]" ECF No. 15.  On May 23, 2016, Special Master Hamilton-Fieldman ordered Petitioner to file documentation in support of her allegation that G.A. suffered six months of vaccine-induced injury and an amended statement of completion by June 27, 2016. Non-PDF Order, docketed May 23, 2016.

Petitioner filed three motions for extension of time over the next five months, extending her deadline until October 27, 2016. *See* ECF Nos. 17, 19, 21. Over this period, Petitioner filed supplemental medical records and additional notices from providers stating that they did not have records pertaining to G.A. *See generally* Pet'r's Exs. 15–30, ECF Nos. 16-2–16-5, 18-2–18-10, 20-2–20-4. On October 27, 2016, Petitioner filed a status report indicating that she had been unsuccessful in obtaining additional records and alerted the Court that "[a]ll therapy records that . . . Petitioner [was] able to obtain ha[d] been filed." ECF No. 23. Petitioner then noted multiple places in the record which she asserted "showed that [G.A.] received therapy and that [G.A.'s] injuries lasted more than six months." *Id.*

On November 15, 2016, Special Master Hamilton-Fieldman held a status conference with the parties in which "Respondent requested that Petitioner clarify the vaccine injury alleged." ECF No. 24 at 1. Respondent also requested "additional evidence, such as photographs and an affidavit from Petitioner," to allow Respondent to meaningfully engage in potential settlement discussions. *Id.* Petitioner was given until December 27, 2016, to file this additional documentation as well as a status report identifying the site of the alleged injury and stating whether a Medicaid lien related to treatment of these injuries existed. *Id.* at 2.

This case was reassigned to the undersigned on January 12, 2017. *See* ECF No. 26. Petitioner filed four motions for extension of time, extending her deadline until March 21, 2017. *See* ECF Nos. 25, 28–30. On March 31, 2017, Petitioner filed ten photographs, *see* Pet'r's Ex. 31, ECF No. 32-2, but did not file the status report or affidavit.  The undersigned held a status conference with the parties on April 4, 2017, and ordered Petitioner to file her affidavit, any documentation related to the previously filed photographs, and a status report by May 4, 2017. ECF No. 34.

After filing a motion for extension of time on May 4, 2017, *see* ECF No. 35, Petitioner filed an affidavit on June 5, 2017, but did not file any documentation regarding the photographs. ECF No. 36.  Petitioner then filed two additional motions for extension of time, ECF Nos. 37–38, which the undersigned granted.  Non-PDF Order, docketed June 15, 2017; Order, ECF No. 39. Petitioner filed a fourth motion for extension of time on August 4, 2017.  ECF No. 40.  The undersigned issued a Show Cause Order on August 8, 2017, and gave Petitioner until August 11, 2017, to complete the record.  ECF No. 41.  Petitioner filed a status report on August 11, 2017, in which she provided dates when she believed the photographs she previously filed were taken.  ECF No. 42.

Respondent filed his Rule 4(c) report on December 14, 2017, *see* ECF No. 49, and his motion to dismiss on December 20, 2017.  Resp't's Mot. to Dismiss, ECF No. 51.  Petitioner filed her response on February 20, 2018.  Pet'r's Resp., ECF No. 54.  Respondent filed his reply on February 28, 2018.  Resp't's Reply, ECF No. 55.

The undersigned held a status conference with the parties on March 8, 2018.  *See* Minute Entry, docketed Mar. 8, 2018.  The parties agreed that G.A. should be examined by a physician that could opine on the relationship, if any, between G.A.'s scarring and her vaccination to meet the six-month requirement under the Act.  ECF No. 56 at 1.  The parties agreed to draft questions regarding G.A.'s scarring for the physician to answer.  *Id.* at 2.  The undersigned stayed Respondent's motion to dismiss and ordered the parties to submit their agreed upon questions by April 9, 2018.  *Id.*

The parties filed two motions for extension of time, ECF Nos. 57–58, which the undersigned granted, Non-PDF Orders, docketed Apr. 11 and 23, 2018, and filed their questions for G.A.'s physician on May 7, 2018.  ECF No. 59.  The undersigned then ordered Petitioner to file the physician's response to the questions by June 6, 2018.  ECF No. 60.

Petitioner filed two motions for extension of time, ECF Nos. 61–62, which the undersigned granted.  Non-PDF Order, docketed Jun. 7, 2018; Non-PDF Order, docketed July 9, 2018. Petitioner filed her third motion for extension of time on August 6, 2018.  ECF No. 63.  The undersigned denied this motion and ordered Petitioner to file the physician's response by August 20, 2018.  ECF No. 64.  Petitioner filed a fourth motion for extension of time on August 20, 2018. ECF No. 66.  The undersigned denied this motion and ordered Petitioner to file any evidence or documentation she would like to be considered in response to Respondent's motion to dismiss by August 31, 2018.  ECF No. 67.

On August 31, 2018, Petitioner filed five additional exhibits.  Pet'r's Exs. 32–38, ECF Nos. 68-1–68-6.  These exhibits consisted of medical literature and a letter from Dr. Penny White, a physician at PCC Community Wellness Center at West Suburban.  *See id.*  The undersigned held a status conference with the parties on September 19, 2018, to determine how they wished to proceed.  Min. Entry, docketed Sept. 19, 2018.  The parties agreed that Petitioner should file an amended petition containing allegations consistent with the current record and G.A.'s alleged injuries.  ECF No. 70.  Petitioner was given one last opportunity to file any additional information she believed to be relevant to the pending motion to dismiss by October 19, 2018.  *Id.*

Petitioner filed an amended petition and seventeen pieces of medical literature on October 19, 2018. ECF Nos. 71–73. This matter is now ripe for consideration.

## II.   Factual Background

### A.  Medical Records

G.A. was born on February 16, 2013. Pet'r's Ex. 12 at 4, ECF No. 12-4. Doctors noted that G.A. was developing normally at both her five-week and ten-week well child visits.[6]   *See* Pet'r's Ex. 5 at 66, 75, ECF No. 10-6. At G.A.'s four-month well child visit, the doctor noted that G.A. was "meeting milestones" and showed "[s]teady progression on the growth chart[,]" but that her "gross motor, problem solving, and personal social scores [were] in [the] grey area[.]"  *Id.* at 58. The doctor also noted that G.A.'s "[s]kin exam [was] consistent with bug bites."  *Id.* G.A. presented for her six-month well child check on September 10, 2013, and the doctor noted that G.A. "appear[ed] to be in good health and meeting all developmental milestones."  *Id.* at 45, 49.

On February 27, 2014, G.A. presented for her one-year well child check.  *Id.* at 31. Petitioner expressed "[c]oncerns . . . includ[ing] eczema."  *Id.* at 33. The "[s]kin, [i]nspection" section of the physical exam record notes that G.A.'s "right thigh [had a] dry papular rash," G.A. was "scratching [her] leg," and G.A.'s "skin [was] dry overall."  *Id.* at 34. The doctor assessed G.A. with "eczema" and "gave [Petitioner] sensitive skin precautions . . . [and a prescription] for hydrocortisone 1%."  *Id.*

G.A. presented for her fifteen-month well child visit on May 21, 2014.  *Id.* at 22. Petitioner complained of a "diaper rash" which had "started about [four] days" prior.  *Id.* at 24. Petitioner also complained of "a rash around G.A.'s neck," and the doctor noted that G.A. had been "scratching at it."  *Id.* The doctor told Petitioner to "apply hydrocortisone to [G.A.'s] neck rash twice daily for [seven] days."  *Id.* at 26.

On July 3, 2014, G.A. presented for a developmental evaluation to determine whether she required an Early Intervention Service Plan ("EISP"). Pet'r's Ex. 1 at 3, ECF No. 10-2. She was referred for this because a treating doctor from one of the local clinics had "concerns with [G.A.'s] speech, fine motor, problem solving[,] and personal-social development."  *Id.* The evaluator noted that G.A. had a thirty-nine percent delay in her fine motor skill development and a twenty-seven percent delay in her gross motor skill development.  *Id.* The evaluator also noted the following concerns regarding G.A.'s gross motor skills: "[s]he does not creep upstairs[;] [i]ncreased weight shifting and balancing skills need development."  *Id.* at 28.

G.A. presented for her twenty-two-month well child visit on December 16, 2014. Pet'r's Ex. 5 at 15. At this visit, Petitioner complained to the doctor that G.A. "ha[d] been complaining of some pain when walking for long periods of time[,]" which Petitioner thought was "related to a[n] issue she had when delivering [G.A.] ([G.A.'s] umbilical cord was wrapped around her legs during delivery)."  *Id.* at 17. Petitioner reported that G.A. "complain[ed] of leg pain," but the doctor wrote that G.A. "climb[ed] and r[a]n without issues."  *Id.* at 20. During G.A.'s physical

---

[6] Petitioner did not have a specific primary care physician. However, she took G.A. to local clinics to ensure that G.A. was seen for all well child visits and any medical concerns.

examination, the doctor noted that G.A. was "walking with [a] slight limp" and "drag[ing] [her] right leg a little bit." *Id.* at 21.  The doctor recommended a physical therapy ("PT") evaluation and ordered hip and leg x-rays.  *Id.*  G.A. also received the flu vaccine in her right vastus lateralis.[7]  *Id.* at 16.  G.A. underwent x-rays on December 23, 2014, which were "normal" and showed "no fracture[,] [n]o marked soft tissue swelling[, n]o foreign body[, and n]o destructive lesion[.]" Pet'r's Ex. 23 at 13, ECF No. 18-6.

On February 3, 2015, G.A. presented for a PT evaluation.  Pet'r's Ex. 1 at 22.  At this visit, Petitioner "expressed some concerns about [G.A.'s] limping when walking."  *Id.*  The physical therapist wrote that G.A. "[w]alk[ed] 200 feet and r[a]n[] 100 feet, . . . [w]alk[ed] backwards, [j]ump[ed] on the floor, with feet together, [all] without support, with adult supervision[, and s]how[ed] no walking deviations at this time."  *Id.*  The physical therapist concluded that G.A. was "in no need for any further PT intervention."  *Id.*

On April 29, 2015, G.A. presented for her "2 [year-old] well child exam and follow up on leg pain/sore[ness]."  Pet'r's Ex. 5 at 6.  Petitioner reported that G.A. had been experiencing "leg pain since shots."  *Id.* at 7.  G.A. also had developed a "bruise and now there is a knot in her leg. [The] knot has gotten smaller. [She was] able to walk and run."  *Id.*  The doctor recorded Petitioner's account that G.A "f[ell] a lot when running[]" and had been attending "physical therapy . . . once weekly[ but had shown] no improvement[.]"  *Id.*  Under the assessment section of this record, the doctor wrote that Petitioner "report[ed a] lump on [G.A.'s] leg after administration of vaccines during last visit."  *Id.* at 9.  An examination showed "erythematous satellite lesions in [genitourinary] area; scarring with mild hyperpigmentation on right thigh[; and two] small palpable superficial nodule[s]."  *Id.* at 10.  The doctor also noted "[range of motion] intact, normal tone, strength 5/5, moves extremities equally, [and] no limp."  *Id.*  The doctor determined that the nodules were "likely scar tissue based on exam and history[]"  and did not prescribe any treatment, opting instead to "continue to monitor."  *Id.*

On July 1, 2015, G.A. presented to the emergency room for a head injury she sustained when she "was throwing a temper tantrum at home . . . and threw [her]self on [the] floor hitting the back of her head."  Pet'r's Ex. 22 at 27, ECF No. 18-5.  Petitioner did not complain of any issues with G.A's legs or pain associated with walking.  *See id.* at 28.  Doctors noted that G.A. "move[d] all four [extremities]" and was "running around [the] exam room."  *Id.*

On December 8, 2015, G.A. presented for her two-and-a-half-year-old well-child examination.  Pet'r's Ex. 19 at 15, ECF No. 18-2.  Petitioner reported that G.A. "had an injection at [a] previous clinic and subsequent swelling and pain."  *Id.* at 16.  Petitioner also stated that G.A. could not walk and "sometimes gets frustrated and 'falls out[.]'"  The doctor, however, noted that G.A. was "climb[ing], jump[ing] and walk[ing] around the clinic" during the visit.  *Id.* at 16.  Petitioner also "insist[ed] that [G.A.] ha[d] a bone infection and a permanent disability."  *Id.*  On physical examination, G.A. had "no rashes or lesions" on her skin.  *Id.* at 19.

On February 16, 2016, Petitioner brought G.A. for an occupational therapy evaluation.  Pet'r's Ex. 1 at 19–20.  Petitioner expressed a concern regarding a knot in G.A.'s leg "from a shot."

---

[7] The vastus lateralis "is located on the side of the thigh."  VASTUS LATERALIS, available at https://www.healthline.com/human-body-maps/vastus-lateralis-muscle#1 (last visited May 6, 2019).

*Id.* at 19.  The evaluator wrote that G.A. was "able to sit, stand, transition, walk, [and] run independently[.]"  *Id.*  The evaluator noted a need for further intervention to correct delays in G.A.'s fine motor skill development, self-help skills development, and sensory processing skills development, but did not note any delay in gross motor skill development.  *See id.*

On June 16, 2016, G.A. presented for an "ortho referral for genu valgus[8][.]"  *Id.* at 12.  Petitioner reported a concern regarding G.A.'s "gait" and stated that "after receiving [an immunization] . . . [G.A.] developed a bump on her right leg and it affected her walking."  *Id.* at 13.  Petitioner reported that G.A. "received PT . . . but still [complain[ed of]] pain from time to time."  *Id.*  The doctor noted that G.A. was "walking on medial edges of feet[]" and the doctor referred G.A. to an orthopedist.  *Id.*

## B.  Petitioner's Affidavit

Petitioner submitted an affidavit on June 5, 2017.  Pet'r's Ex. 32, ECF No. 36.  Petitioner stated that G.A. had problems at birth which "resulted in her having some pain and an occasional slight limp in her right leg."  *Id.* at 1.  However, Petitioner noted that as G.A. continued to grow, "the only time she really complained was when she was walking or running for a long time and got too tired."  *Id.*

Petitioner stated that when G.A. was given the vaccination at issue, the "nurse who gave the shot . . . . jammed the shot[] in harder than [she] remember[ed] any children's shot[] being given.  G.A. screamed, and it took a long time to calm her down."  *Id.*  Petitioner continued, "G.A.'s right thigh swelled up and became hot to the touch.  There was a black spot where the shot was given, and a big lump developed around it."  *Id.*  Petitioner reported that "G.A. complained that it was very painful, and she kept trying to scratch it."  *Id.*  Petitioner stated that she called the doctor's office regarding "the swelling and the pain and was told to alternate ice and heat and give [G.A] Tylenol."  *Id.*  Petitioner also stated that G.A. "kept complaining of pain, and this was different than the pain she described before the shot that would only occur after walking too much."  *Id.*

Petitioner wrote that she explained G.A.'s symptoms to the doctor at G.A.'s well child visit on April 29, 2015, but that the doctor "seemed to want to minimize what was going on[.]"  *Id.*  Petitioner indicated that "the knot on [G.A.'s] leg was not as big as it had been, [but] it was still pretty good sized."  *Id.*  Petitioner concluded her affidavit by stating that "G.A. has continued to experience some pain in her leg and still has a limp.  She also still has a scar where the shot was given."  *Id.*

## C.  Letter from Dr. Penny White, M.D.

Petitioner filed a letter from Dr. Penny White on August 31, 2018.  Pet'r's Ex. 33, ECF No. 68-1.  Dr. White wrote her letter in response to the questions drafted by the parties about a possible cause for scarring on G.A.'s right thigh.  She wrote that she "saw GA for the first time in May of 2018[,]" and noted that this was the only time she had "formally" seen G.A., although she had answered questions from Petitioner on multiple occasions.  *Id.*  Dr. White wrote that G.A.

---

[8] Genu valgum is "a deformity in which the knees are abnormally close together and the space between the ankles is increased."  *Dorland's* at 771.

"ha[d] a lichenified, scar-like area on her right thigh[]" that measured "about 1 by 1.5 centimeters." *Id.*  Although it was "hypopigmented[,]" she "doubt[ed] that the patch of lichenification . . . could be caused solely by the administration of a single vaccine." *Id.*  Although the vaccine was administered in G.A.'s right vastus lateralis, Dr. White wrote that "[t]he scarring [was] more located over the right vastus intermedius.[9]  There was no scaring over the lateralis area." *Id.*  Dr. White opined that "[t]he scar could be from longstanding eczema[ because t]he irritation and itching can cause a scar-like lichenfied picture." *Id.*  Dr. White concluded that "the scarring [was] from an allergic reaction like . . . [those] see[n] in chronic eczema." *Id.*

### III.    Applicable Legal Standards

#### A.  Summary Judgment Standard

Although Respondent styled his motion as a motion to dismiss, the undersigned is treating it as a motion for summary judgment.  Respondent's main contention is that there is no evidence in the record that G.A. "suffered the residual effects or complications of [her alleged injury] for more than six months after the administration of the vaccine," a threshold requirement under the Vaccine Act.  Resp't's Mot. to Dismiss at 7, ECF No. 51.  "It is therefore reasonable to apply the legal standards applicable to summary judgment—even though the motion does not follow in precise form the requirements for such a motion under the Court of Federal Claims'[] rules[.]" *Grieshop v. Sec'y of Health and Human Servs.*, No. 14-119V, 2015 WL 4557620, *3 n.5 (Fed. Cl. Spec. Mstr. Jun. 5, 2015).

The Vaccine Rules allow for a special master to decide a case on summary judgment.  *See Jay v. Sec'y of Health & Human Servs.*, 998 F.2d 979, 982–83 (Fed. Cir. 1992); *see also* Vaccine Rule 8(d) ("The special master may decide a case on the basis of written submissions without conducting an evidentiary hearing.  Submissions may include a motion for summary judgment, in which event the procedures set forth in RCFC 56 will apply.").  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a).  A dispute is genuine if "the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc. v. United States*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*  The moving party "bears the [burden] of . . . demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "set fort specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  A showing of "mere denials or conclusory statements [is] not sufficient" to demonstrate genuine disputes. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed. Cir. 1987).

---

[9] The vastus intermedius "is located along the upper portion of the femur, which is also known as the thighbone. This muscle covers the front part of the femur and the side of the femur."  VASTUS INTERMEDIUS, available at https://www.healthline.com/human-body-maps/vastus-intermedius#1 (last visited May 6, 2019).

### B.  The Vaccine Act's Six-Month Requirement

The Vaccine Act mandates that a petition for compensation contain certain factual contentions as a condition precedent to enter the Vaccine Program.  *See* 42 U.S.C. § 300aa-11(c).  The "six-month" requirement mandates that a petition contain allegations that the injured person "suffered the residual effects or complications of [the alleged] illness, disability, injury, or condition for more than [six] months after the administration of the vaccine."  §300aa-11(c)(1)(D)(i).  "Congress included [the six-month requirement] . . . 'to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine.'"  *Cloer v. Sec'y of Health and Human Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011) (quoting H.R. Rep. No. 100–391(I), at 699 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313–1, –373.).  Therefore, it "is intended to restrict eligibility to the compensation program[.]"  *Id.*

A petitioner cannot satisfy the six-month requirement by "merely submit[ting] a petition and an affidavit parroting the words of the statute[.]"  *Black v. Sec'y of Health and Human Servs.*, 33 Fed. Cl. 546, 550 (1995), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).  Rather, a petitioner "must submit supporting documentation which reasonably demonstrates" that the injury alleged in the petition lasted more than six months from the date of vaccination.  *Id.*

## IV.   Summary of the Parties' Arguments

### A.  Respondent's Motion,[10] ECF No. 51

Respondent filed his motion to dismiss on December 20, 2017.  Resp't's Mot. to Dismiss, ECF No. 51.  In his motion, Respondent argues that "[P]etitioner cannot establish that G.A. 'suffered the residual effects or complications of [pain, swelling, itching, erythema, induration and ecchymosis, limp, or scarring] for more than six months after the administration of the vaccine,' or that her alleged injury, 'resulted in inpatient hospitalization and surgical intervention,' which are threshold requirements under the Act."  *Id.*  at 7.  Regarding the alleged nodules on G.A.'s right leg, Respondent argues that, aside from an April 29, 2015 office visit, "no subsequent examination by a medical provider made any mention that G.A. continued to have these nodules, and no medical provider opined that the scar on G.A.'s thigh is related to vaccination."  *Id.* at 8.

Respondent further argues that "G.A.'s limp and leg pain unquestionably predated her vaccinations, as those symptoms are noted in the [primary care physician's] record of December 16, 2014, the day of vaccination."  *Id.*  Respondent continues, "no medical provider to whom G.A. presented post[] vaccination commented that she had leg pain or a limp.  Rather, the records consistently show that G.A. had a normal gait, could run, jump, play, and climb stairs without any issues."  *Id.*

---

[10] Respondent also argued that Petitioner has not provided evidence that G.A. suffered any vaccine injury at all.  Resp't's Mot. to Dismiss at 6.  Although the parties presented evidence on this issue, because the undersigned has found that Petitioner has not presented preponderant evidence that G.A. suffered an injury that meets the requirements under §300aa-11(c)(1)(D)(i), the undersigned will not discuss the parties' arguments with respect to any other issue.

Lastly, Respondent argues that, despite Petitioner's statements that G.A. was receiving continued PT for her alleged injuries, "[t]he records . . . belie those statements[.]" *Id.* Respondent notes that "the [Medicaid] benefit statement [submitted as Petitioner's exhibit 28] demonstrates that other than G.A.'s physical therapy assessment on February 3, 2015, she did not receive physical therapy in 2015 or 2016." *Id.*

### B.   Petitioner's Response, ECF No. 54

Petitioner filed her response on February 20, 2018.  Pet'r's Resp., ECF No. 54.  In her response, Petitioner argues that "[t]here are several locations in the [medical] records that show that [G.A.] received therapy and that her injuries lasted more than six months." *Id.* at 7.  Petitioner then lists the following nine places in the medical records which she argues demonstrate six months of vaccine-induced injury: (1) records from the December 22, 2014 doctor's office visit where G.A. received the vaccination at issue; (2) records from the initial PT consultation conducted on February 3, 2015; (3) a record noting a missed doctor's appointment on February 19, 2015; (4) an April 29, 2015 doctor's office visit; (5) a May 11, 2015 letter from Lindsay Bowman, speech therapist; (6) records from a doctor's office visit on December 8, 2015; (7) records from an occupational therapy evaluation on February 16, 2016; (8) records from a doctor's office visit on June 16, 2016; and (9) a Medicaid lien dated through February 4, 2016, listing all the medical providers whom G.A. saw to that date.  *See id.* at 7–9.  Petitioner states that "this is the type of case that [the Vaccine] [P]rogram was designed to help[]" because "[w]e are dealing with a family with very limited means, living in a dangerous neighborhood, [and] provided limited medical services on Medicaid[.]" *Id.* at 9.  Petitioner concludes that "[s]he is adamant about what her daughter experienced and anxious to tell her story." *Id.*

### C.   Respondent's Reply, ECF No. 55

Respondent filed his reply brief on February 28, 2018.  Resp's Reply, ECF No. 55. Respondent maintains that Petitioner has not provided any evidence of an injury meeting the requirements under §300aa-11(c)(1)(D)(i), aside from Petitioner's "statements alone[,]" which Respondent argues are "insufficient to defeat summary judgement." *Id.* at 4.  Respondent argues that "a careful review [of the evidence submitted by Petitioner] reveals that there is actually no medical record evidence that supports [P]etitioner's claim." *Id.* Specifically, Respondent argues that "[P]etitioner's repeated assertions that G.A. was limping, dragging her leg, and could not walk are contradicted by every doctor who evaluated [G.A.]." *Id.*  He argues that "[g]iven the overwhelming evidence in the record, summary judgement . . . is appropriate." *Id.*

## V.   Analysis

In her amended petition, Petitioner alleges that G.A. sustained the following injuries because of the flu vaccination: "pain, swelling, itching, erythema, induration and ecchymosis, . . . limp, and . . . scarring[.]" Am. Pet. at 3–4.  It is undisputed that G.A. received the flu vaccine on December 16, 2014.  *See id.* at 2; Resp's Mot. to Dismiss at 2–3, ECF No. 51.  Petitioner's affidavit states that after receiving the vaccination, G.A. immediately "screamed" and she developed swelling and a lump on her thigh. Pet'r's Ex. 32 at 1.  This allegation places the onset date for G.A.'s alleged injuries as the same date as the vaccination—December 16, 2014.

Therefore, Petitioner must demonstrate, by a preponderance of the evidence, that G.A.'s alleged injuries lasted until at least June 16, 2015.  For Respondent's motion to succeed, there must "no genuine dispute as to [the] material fact" that none of G.A.'s alleged injuries lasted until at least June 16, 2015.  RCFC 56(a).

Petitioner listed nine places in the medical records that she argues demonstrate six months of vaccine-induced injury.  *See* Pet'r's Response at 7–9.  The undersigned has reviewed the evidence submitted and determined that "there is no genuine dispute as to any material fact" because "the evidence is such that [no] reasonable [fact finder] could" find that any of G.A.'s alleged injuries lasted until June 16, 2015.  *Anderson*, 477 U.S. at 248; RCFC 56(a).  Therefore, Respondent "is entitled to judgement as a matter of law."  RCFC 56(a).

### A.  Doctor's Office Visit on December 16, 2014 – Pet'r's Ex. 5 at 15–21

This record is from G.A.'s twenty-two-month well child visit with Dr. Turnock at the Austin Family Health Center.  Pet'r's Ex. 5 at 15.  G.A. received the immunization at issue at this visit, *id.* at 16, and Petitioner stated in her affidavit that G.A. "screamed . . . [and her] right thigh swelled up and became hot to the touch."  Pet'r's Ex. 32 at 1.  Therefore, this record provides uncontested evidence of the first manifestations of G.A.'s injury and the date, December 16, 2014, from which Petitioner must demonstrate six months of vaccine-induced injury.  It does not provide evidence that G.A.'s alleged injuries lasted for six months after that date, and therefore is not evidence that her injuries meet the requirements under §300aa-11(c)(1)(D)(i).

### B.  Initial PT Consultation on February 3, 2015 – Pet'r's Ex. 3 at 4–5

This record is from G.A.'s initial PT consultation with the physical therapist.  Pet'r's Ex. 3 at 5.  Although Petitioner stated that G.A. had been walking with a limp, the physical therapist observed G.A. "[w]alk[] 200 feet and run[] 100 feet, . . . [w]alk[] backwards, . . . [j]ump[] on the floor, with feet together, . . . [and c]limb[] on and off furniture," all "without support."  *Id.* at 4–5.  He concluded that G.A. did not need any further PT intervention.  *Id.* at 5.  The only evidence in this record of an injury is Petitioner's own statements.  This record demonstrates that, as of six weeks post vaccination, G.A. was not walking with a limp.  Therefore, G.A.'s alleged "limp" injury does not meet the requirements under §300aa-11(c)(1)(D)(i).

### C.  Missed Doctor's Appointment on February 19, 2015 – Pet'r's Ex. 5 at 12

This record is a one-page note reflecting that G.A. missed an appointment with Dr. Turnock at the Austin Family Health Center.  Pet'r's Ex. 5 at 12.  The record notes that the appointment was for "limp and lump on leg."  *Id.*  No further information is available because G.A. was not actually seen by any treatment provider.  Therefore, it is not evidence that any of G.A.'s alleged injuries meet the requirements under §300aa-11(c)(1)(D)(i).

### D.  Doctor's Office Visit on April 29, 2015 – Pet'r's Ex. 5 at 6–11

This record is from G.A.'s two-year "well child exam and follow up on leg pain/sore[ness]" following vaccination.  Pet'r's Ex. 5 at 7.  Although this record does reflect that the doctor observed the nodules on G.A.'s legs, it does not show a six-month vaccine-related injury.  As an initial matter, Petitioner does not include the nodules as one of the alleged vaccine-induced injuries listed

in her petition. *See* Am. Pet. at 3–4. In addition, this appointment occurred approximately five months post vaccination, and the doctor did not note the location, size, or cause of the nodules, nor recommend any treatment for them. Therefore, this record does not constitute evidence of an injury meeting the requirements under §300aa-11(c)(1)(D)(i).

### E. Letter from Speech Therapist Dated May 11, 2015 – Pet'r's Ex. 24

On May 11, 2015, Lindsay Bowman sent a letter in support of Petitioner's attempt to change her place of residence. *See* Pet'r's Ex. 24. The one-page letter details the environment in which Petitioner and her children were living in at the time. *See id.* Nowhere in the letter does Ms. Bowman mention or discuss G.A.'s alleged leg injuries. The letter does not discuss G.A.'s health at all, aside from mentioning briefly that G.A. was "demonstrating delays in her development[.]" *Id.*

Petitioner avers that "[t]his letter implied that [G.A.] was going to still be under therapy and thus a month after this letter would [(sic)] six months from the date she received her vaccinations." Pet'r's Response at 8. However, it is unclear exactly what argument Petitioner is advancing. Ms. Bowman is a speech therapist. Whether G.A. was continuing to undergo speech therapy is irrelevant to her vaccine claim. Petitioner has not claimed that the vaccinations G.A. received on December 16, 2014, caused her to develop injuries requiring speech therapy. Therefore Ms. Bowman's letter is not evidence of a vaccine injury that meets the requirements under §300aa-11(c)(1)(D)(i).

### F. Doctor's Office Visit on December 8, 2015 – Pet'r's Ex. 19 at 15

On December 8, 2015, Petitioner took G.A. in for a "check up" and "report[ed] that [G.A.] had an injection at [a] previous clinic and subsequent swelling and pain." Pet'r's Ex. 19 at 16. This record is not evidence that G.A. suffered an injury that meets the requirements under §300aa-11(c)(1)(D)(i). The doctor noted that G.A.'s skin did not have any rashes, lesions, or scarring. The doctor also reported that G.A. was not limping during the visit, but rather was climbing, walking, and jumping around the clinic. None of G.A.'s alleged injuries are discussed in the record, and the doctor noted that Petitioner "appear[ed] hypervigilant for negative outcomes" and therefore the doctor "discussed normal behaviors with 2 year olds [and that] tantrums are not signs of infections[.]" *Id.* at 19. This record does not, therefore, constitute evidence that G.A.'s alleged vaccine-induced injuries persisted for six months post vaccination.

### G. Occupational Therapy Evaluation on February 16, 2016 – Pet'r's Ex. 1 at 19

On February 16, 2016, G.A. presented for an occupational therapy evaluation. Pet'r's Ex. 1 at 19. This record is not evidence that G.A. suffered an injury that meets the requirements under §300aa-11(c)(1)(D)(i). Although the evaluator noted delays in G.A.'s fine motor skill, self-help skill, and sensory skill development, the evaluator did not note any delays in G.A.'s gross motor skill development. *See id.* Rather, the evaluator wrote that G.A. was able to walk, run, and stand from a sitting position independently. *Id.* The evaluator did not note any limp, redness, scarring, or any other injury on G.A.'s leg. *See id.* at 19–20. Therefore, this visit is not evidence of six months of vaccine-induced injury.

### H.  Doctor's Office Visit on June 16, 2016 – Pet'r's Ex. 19 at 13

On June 16, 2016, Petitioner took G.A. to her primary care doctor to "make sure she [was] up to date with everything."  Pet'r's Ex. 19 at 13.  This record again fails to provide evidence that any of G.A.'s alleged injuries meet the requirements under §300aa-11(c)(1)(D)(i).  The record does not note any limping, scarring, lesions, or rashes on G.A.'s skin, nor that G.A. was experiencing any pain at the time of the visit.  The only evidence of any injury was provided by Petitioner in the history section of the record.  In addition, the doctor conducted an examination of both of G.A.'s lower extremities and only noted possible genu valgum.  It is logical to conclude that if G.A. had the scarring or rashes, or was experiencing pain at this visit, an examination of her lower extremities revealing such injuries would have been documented in the record.  Because this record does not document that any of G.A.'s alleged injuries or symptoms of those alleged injuries were present at this visit, it is not evidence that G.A. suffered an injury which lasted for six months post vaccination.

### I.  Medicaid Lien Dated February 4, 2016 – Pet'r's Ex. 28

Petitioner states that her Medicaid record "lists the providers that [G.A.] saw."  Pet'r's Ex. 28.  A review of the record, however, reveals a list detailing dates of service; dates of payments; Medicaid coding numbers; a cursory description of each visit, including testing done; diagnoses; the amount charged; the amount paid; and the name of the provider.

This list is not evidence of six months of vaccine-induced injury.  The cursory description does not note lumps, bumps, scarring, or any other injury that Petitioner alleges.  This list does not provide any information from the visits other than what is already provided in each medical record and discussed in sections A–H above.  Therefore, it cannot be evidence of an injury that meets the requirements under §300aa-11(c)(1)(D)(i).

### J.  Photographs of G.A.'s Leg – Pet'r's Ex. 31

On March 31, 2017, Petitioner submitted ten photographs purporting to show G.A.'s legs with scarring and rashes.  Pet'r's Ex. 31.  However, as Respondent discusses in his reply brief, there are evidentiary issues with these photographs.  *See* Resp't's Reply at 8.  In a status report filed on August 11, 2017, Petitioner's counsel wrote:

> From talking with Petitioner and from studying the dates the pictures were "texted" to Petitioner's counsel, and from studying the names of the files that were received, counsel is confident that the pictures on the first 3 pages of Exhibit 31 were taken on June 12, 2015.  The pictures on pages 4 through 10 were received on, and it is believed were taken on February 23, 2017.

ECF No. 42.  Although Petitioner asserts that these pictures are of G.A., there is nothing in the photographs or accompanying them to authenticate the time, date, or subject-matter of each photo. Additionally, the photographs do not contain a time-stamp.  There is also no information regarding

who took the photographs or where they were taken. Although it is apparent in some of the photographs that a specific leg—left or right—is depicted, in others it is less clear.

Even if the photographs could be authenticated, they still would not be evidence of six months of vaccine-induced injury. Petitioner did not indicate the device used to take these photographs, but they are of low quality and resolution. The first photograph is particularly blurry and only two raised bumps on the middle of the thigh are visible. The second and third photographs depict two small areas of discolored skin with multiple raised bumps on the middle of the thigh and one small area of discolored, dry skin on the outer thigh. The remaining pictures show an area on the upper-middle thigh with two patches of discolored raised bumps. In the final picture, there appears to be multiple white scar lines. Petitioner did not highlight, circle, or draw attention to anything in the photographs, nor indicate what injury she was purporting the photographs depict. Without context, these photographs do not illustrate any injury that has been recorded in the medical records since the date of vaccination. Furthermore, G.A.'s dry skin patches and discoloration with raised bumps are not alleged injuries and therefore the photographs do not show six months of vaccine-induced injury.

### K.  Letter from Dr. Penny White – Pet'r's Ex. 32

Although Dr. White did note scarring on G.A.'s right vastus intermedius in August of 2018, *see* Pet'r's Ex. 32, this letter is not evidence of an injury lasting six months for multiple reasons. First, G.A. was diagnosed with eczema on February 27, 2014. Pet'r's Ex. 12 at 33. Dr. White opined that the scarring she observed on G.A.'s thigh was "from an allergic reaction like we would see in chronic eczema." Pet'r's Ex. 32. Second, G.A.'s vaccinations were given in the right vastus lateralis, but Dr. White wrote that the scarring was present on G.A.'s "right vastus intermedius," a different area on G.A.'s thigh. *Id.*; *see also supra* notes 10–11. Lastly, Dr. White saw G.A. in August of 2018—over four years post vaccination. *Id.* Although scarring may have been present at that visit, numerous medical records from closer in time to the vaccinations at issue do not contain any mention of scarring on G.A.'s legs.

### L.  Evaluation of Evidence

Although Petitioner referenced numerous medical records in her response to Respondent's motion to dismiss, none of the cited records demonstrate an injury meeting the threshold requirement to bring a claim under §300aa-11(c)(1)(D)(i). Furthermore, the undersigned reviewed the entire record, which includes additional evidence contradicting Petitioner's description of G.A.'s conditions. Petitioner alleges that G.A. developed "an injection site reaction that resulted in pain, swelling, itching, erythema, induration and ecchymosis, as well as a limp . . . [and] scarring" from the vaccination she received on December 16, 2014. Am. Pet. at 3–4. However, the record demonstrates that the only time a medical professional noted any of the injuries alleged in the petition was the office visit on April 29, 2015, when a doctor observed scarring and hyperpigmentation on G.A.'s right thigh. Pet'r's Ex. 5 at 7. Petitioner "concedes that there is no other place in G.A.'s medical records that note[s] that [a] medical provider actually 'observed' the lump." Pet'r's Response at 5. In no other place in the medical records submitted by Petitioner does a medical professional note any scarring or redness on G.A.'s thigh.

In addition, doctors observed G.A. walking, running, climbing on and off furniture, and climbing up and down stairs without support at numerous visits during the six-month period following G.A.'s vaccination. A physical therapist concluded two months post vaccination that G.A. did not require any PT, and the Medicaid lien shows that the only payment made for PT was the initial PT evaluation. Therefore, Petitioner's claims that G.A. was undergoing continued PT are without merit.

There is no evidence in the record beyond Petitioner's assertions that any of the injuries claimed in the petition meet the threshold requirements under §300aa-11(c)(1)(D)(i), a condition precedent to bringing a claim under the Vaccine Act. Although Petitioner's statements alone are not enough to succeed in the Vaccine Program, in certain circumstances they may be considered persuasive on summary judgment. *See Grieshop*, 2015 WL 4557620, at *3. In *Grieshop*, the petitioner alleged that he had developed a shoulder injury after receiving the TdaP vaccine. *Id.* at *1. The respondent filed a motion to dismiss, arguing that the petitioner had failed to provide evidence that his alleged shoulder injury had persisted for at least six-months post vaccination. *Id.* at *5. The petitioner relied on PT records and affidavits to defeat the respondent's motion. *Id.* The special master noted that the PT records were "not especially strong proof" of causation because the physical therapist could not corroborate *all* of petitioner's stated symptoms. *Id.* However, the special master found that the records "support[ed the petitioner's] allegations regarding the length of time his symptoms lasted[]" because the physical therapist acknowledged the presence of *some* of the petitioner's symptoms. *Id.* The special master noted that the affidavits relied on by the petitioner were "of course inherently less probative than the contemporaneous medical records, and would be by [themselves] insufficient to create a triable issue of fact." (citation omitted). *Id.* However, the special master concluded that the "affidavits d[id] help flesh out [the p]etitioner's allegation about the temporal length of his symptoms." *Id.* The special master found that this combination of evidence created a genuine dispute as to whether the petitioner's alleged injury lasted at least six months post vaccination. *Id.* at * 6.

In the present case, however, Petitioner's statements regarding G.A.'s alleged injuries are not only unsupported by the medical records, but in many instances are directly contradicted by the doctors' observations. This is especially true regarding Petitioner's assertions that G.A. required and attended multiple PT sessions. Because Petitioner's statements and allegations are conclusory and contradicted by the medical records, they do not raise a genuine dispute of material fact. *See Lamell v. Sec'y of Health and Human Servs.*, No. 90-3607V, 1991 WL 161079, *4 (Fed. Cl. Spec. Mstr. Aug. 5, 1991) (stating "Petitioners' and [the medical experts'] affidavits are insubstantial, contradict the medical records, and do not raise a genuine issue of material fact."). Therefore, they cannot defeat summary judgment.

## VI.  Conclusion

The undersigned finds that Petitioner has not alleged facts or submitted evidence to demonstrate by a preponderance of the evidence that G.A. "suffered the residual effects or complications of [the alleged] illness, disability, injury, or condition for more than [six] months after the administration of the vaccine." §300aa-11(c)(1)(D)(i). Because this is a condition

precedent to bringing a claim under the Vaccine Act, the undersigned hereby **GRANTS** Respondent's motion to dismiss.  The Clerk of Court is directed to enter judgment accordingly.[11]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[11] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.