# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

Filed: April 10, 2020

Not For Publication

```
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
LINDA KIMBROUGH, on behalf of G.A.,   *          No. 16-170
                                      *
              Petitioner,             *          Special Master Sanders
                                      *
v.                                    *
                                      *
SECRETARY OF HEALTH                   *          Reasonable Basis; Influenza ("Flu")
AND HUMAN SERVICES,                   *          Vaccine; Attorneys' Fees and Costs;
                                      *          Ecchymosis; Eczema; Induration; Itching;
              Respondent.             *          Swelling; Scarring.
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

*Clifford J. Shoemaker*, Shoemaker, Gentry & Knickelbein, Vienna, VA, for Petitioner.
*Debra A. Filteau Begley*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION[1]

On February 4, 2016, Linda Kimbrough ("Petitioner") filed a petition on behalf of G.A. pursuant to the National Vaccine Injury Compensation Program ("Program" or "Vaccine Program").[2]  Petitioner alleged that the influenza ("flu") vaccine G.A. received in her right leg on December 16, 2014, caused her to "experience[] an injection site reaction that resulted in pain, swelling, itching, erythema,[3] induration[4] and ecchymosis,[5] as well as a limp . . . [and] scarring[.]" Am. Pet. at 3–4, ECF No. 71.  On December 20, 2017, Respondent filed a motion to dismiss, Resp't's Mot. to Dismiss, ECF No. 51, which I granted on May 24, 2019, *see* Dec., ECF No. 75; *see also Kimbrough ex rel. G.A. v. Sec'y of Health & Human Servs.*, No. 16-170V 2019 WL 2612757 (Fed. Cl. Spec. Mstr. May 17, 2019).

---

[1] This decision shall be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet**. In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, I agree that the identified material fits within the requirements of that provision, such material will be deleted from public access.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa- 10 et seq. (hereinafter "Vaccine Act," "the Act," or "the Program").

[3] Erythema is defined as "redness of the skin produced by congestion of the capillaries." *Dorland's Illustrated Medical Dictionary* 643 (32nd ed. 2012) [hereinafter "*Dorland's*"].

[4] Induration is defined as "the quality of being hard; . . . the process of becoming hard; . . . an abnormally hard spot or place." *Dorland's* at 933.

[5] Ecchymosis is defined as "a small hemorrhagic spot, larger than a petechia, in the skin or mucous membrane forming a non-elevated, rounded or irregular, blue or purplish patch." *Dorland's* at 588.

On August 27, 2019, Petitioner filed a motion for attorneys' fees and costs, seeking **$48,093.80** in attorneys' fees and **$1,153.91** in costs, for a total of **$49,247.71**. Pet'r's Mot. for Attys' Fees and Costs, ECF No. 80 [hereinafter Pet'r's Mot. for AFC]. On September 6, 2019, Respondent filed his response to Petitioner's motion, objecting on the basis that Petitioner failed to establish a reasonable basis for her claim. Resp't's Resp. at 1, ECF No. 81. Petitioner filed her reply brief on September 14, 2019. Pet'r's Reply, ECF No. 82. For the reasons stated below, I find that Petitioner has not satisfied the statutory requirements for an award of attorneys' fees and costs; therefore, I **DENY** Petitioner's motion.

## I.      Procedural History

Petitioner filed her petition on February 4, 2016. Pet., ECF No. 1. Petitioner has been represented by Mr. Clifford Shoemaker throughout the entirety of this case. Over the next two months, Petitioner filed thirteen exhibits consisting of medical records and multiple notices from medical providers, stating that they did not have any records pertaining to G.A. *See* Pet'r's Exs. 1–13, ECF Nos. 10, 12–13. Petitioner filed her first statement of completion on April 29, 2016. ECF No. 14.

On May 20, 2016, Respondent filed a status report identifying numerous outstanding medical records and stating that Petitioner had filed no "medical records documenting six months of residual symptoms . . .." ECF No. 15. On May 23, 2016, Petitioner was ordered to file documentation in support of her allegation that G.A. suffered six months of vaccine-induced injury and an amended statement of completion by June 27, 2016. Non-PDF Order, docketed May 23, 2016.

Petitioner filed three motions for extension of time over the next five months, extending her deadline to October 27, 2016. *See* ECF Nos. 17, 19, 21. Over this period, Petitioner filed supplemental medical records and additional notices from providers stating that they did not have records pertaining to G.A. See generally Pet'r's Exs. 15–30, ECF Nos. 16-2–16-5, 18-2–18-10, 20-2–20-4. On October 27, 2016, Petitioner filed a status report indicating that she had been unsuccessful in obtaining additional records and alerting the Court that "[a]ll therapy records that . . . Petitioner [was] able to obtain ha[d] been filed." ECF No. 23. Petitioner then noted multiple places in the record, which she asserted "showed that [G.A.] received therapy and that [G.A.'s] injuries lasted more than six months." *Id.*

On November 15, 2016, the Court held a status conference with the parties in which "Respondent requested that Petitioner clarify the vaccine injury alleged." *See* Sched. Order at 1, ECF No. 24; *see also* Min. Entry, docketed Nov. 15, 2016. Respondent also requested "additional evidence, such as photographs and an affidavit from Petitioner," to allow Respondent to meaningfully engage in potential settlement discussions. Sched. Order at 1, ECF No. 24. Petitioner was given until December 27, 2016, to file this additional documentation as well as a status report identifying the site of the alleged injury. *Id.* at 2. Additionally, Petitioner was ordered to state whether a Medicaid lien related to treatment of these injuries existed. *Id.*

Petitioner filed four motions for extension of time, extending her deadline to March 21, 2017. *See* ECF Nos. 25, 28–30. On March 31, 2017, Petitioner filed ten photographs, *see* Pet'r's Ex. 31, ECF No. 32-2, but did not file the status report or affidavit. I held a status conference with the parties on April 4, 2017, and ordered Petitioner to file her affidavit, any documentation related to the previously filed photographs, and a status report by May 4, 2017. ECF No. 34.

After filing a motion for extension of time on May 4, 2017, *see* ECF No. 35, Petitioner filed an affidavit on June 5, 2017, but did not file any documentation regarding the photographs, ECF No. 36. Petitioner then filed two additional motions for extension of time, ECF Nos. 37–38, which I granted, Non-PDF Order, docketed June 15, 2017; Order, ECF No. 39. Petitioner filed a fourth motion for extension of time on August 4, 2017. ECF No. 40. I issued a Show Cause Order on August 8, 2017, and ordered Petitioner to complete the record by August 11, 2017. ECF No. 41. Petitioner filed a status report on August 11, 2017, in which she provided dates when she believed the photographs she previously filed were taken. ECF No. 42.

Respondent filed his Rule 4(c) report on December 14, 2017, see Resp't's Report, ECF No. 49, and his motion to dismiss on December 20, 2017, Resp't's Mot. to Dismiss, ECF No. 51. Petitioner filed her response on February 20, 2018. Pet'r's Resp., ECF No. 54. Respondent filed his reply on February 28, 2018. Resp't's Reply, ECF No. 55. I held a status conference with the parties on March 8, 2018. *See* Minute Entry, docketed Mar. 8, 2018. The parties agreed that G.A. should be examined by a physician that could opine on the relationship, if any, between G.A.'s scarring and her vaccination to meet the six-month requirement under the Act. ECF No. 56 at 1.

On August 31, 2018, Petitioner filed five additional exhibits. Pet'r's Exs. 32–38, ECF Nos. 68-1–68-6. These exhibits consisted of medical literature and a letter from Dr. Penny White, a physician at PCC Community Wellness Center at West Suburban. *See id.* I held a status conference with the parties on September 19, 2018, to determine how they wished to proceed. Min. Entry, docketed Sept. 19, 2018. The parties agreed that Petitioner should file an amended petition containing allegations consistent with the current record and G.A.'s alleged injuries. ECF No. 70. Petitioner was given one last opportunity to file any additional information she believed to be relevant to the pending motion to dismiss by October 19, 2018. *Id.* Petitioner filed an amended petition and seventeen pieces of medical literature on her deadline. Am. Pet., ECF No. 71; Pet'r's Exs. 39–55, ECF Nos. 72-2–72-9, 73-2–73-9.

On May 24, 2019, I granted Respondent's motion to dismiss this case on the basis that Petitioner did not establish a six-month injury duration, Dec., ECF No. 75 ("Decision"), and judgment was subsequently entered, ECF No. 78. On August 27, 2019, Petitioner filed a motion for attorneys' fees and costs. Pet'r's Mot. for AFC. On September 6, 2019, Respondent filed his response to Petitioner's motion, objecting on the basis that Petitioner failed to establish a reasonable basis for her claim. Resp't's Resp. at 1. Petitioner filed her reply brief on September 14, 2019. Pet'r's Reply. This matter is now ripe for consideration.

## II.   Medical History
### a.   Medical Records

This order incorporates the medical facts set out in my May 24, 2019 decision.  The facts stated below are what I found most useful in deciding Petitioner's motion for attorney's fees and costs.

G.A. was born on February 16, 2013.  Pet'r's Ex. 12 at 4.  Doctors noted during both her five-week and ten-week well-child visits that G.A. was developing normally.  *See* Pet'r's Ex. 5 at 66, 75.  During G.A.'s four-month well-child visit, the doctor noted that G.A. was "meeting milestones" and showed "[s]teady progression on the growth chart[,]" but that her "gross motor, problem solving, and personal social scores [were] in [the] grey area . . . ."  *Id.* at 58.  The doctor also noted that G.A.'s "[s]kin exam [was] consistent with bug bites."  *Id.*  During G.A.'s six-month well-child check-up on September 10, 2013, the doctor noted that she "appear[ed] to be in good health and meeting all developmental milestones."  *Id.* at 45, 49.

On February 27, 2014, G.A. presented for her one-year well-child check.  *Id.* at 31.  Petitioner expressed "[c]oncerns . . . includ[ing] eczema."  *Id.* at 33.  The "[s]kin, [i]nspection" section of the physical exam record notes that G.A's "right thigh [had a] dry papular rash," where G.A. was "scratching [her] leg," and G.A.'s "skin [was] dry overall."  *Id.* at 34.  The doctor assessed G.A. with "eczema."  *Id.*  On May 21, 2014, G.A. presented for her fifteen-month well-child visit.  *Id.* at 22.  During this visit, Petitioner complained of a "diaper rash," which had "started about [four] days" prior.  *Id.* at 24.

G.A. presented for a developmental evaluation to determine whether she required an Early Intervention Service Plan ("EISP") on July 3, 2014.  Pet'r's Ex. 1 at 3.  She was referred for this evaluation because a treating doctor had "concerns with [G.A.'s] speech, fine motor, problem solving[,] and personal-social development."  *Id.*  The evaluator noted that G.A. had a thirty-nine percent delay in her fine motor skill development and a twenty-seven percent delay in her gross motor skill development.  *Id.*  The evaluator also noted the following concerns regarding G.A.'s gross motor skills: "[s]he does not creep upstairs[;] [i]ncreased weight shifting and balancing skills need development."  *Id.* at 28.

On December 16, 2014, G.A. presented for her twenty-two-month well-child visit.  Pet'r's Ex. 5 at 15.  During this visit, Petitioner complained to the doctor that G.A. "ha[d] been complaining of some pain when walking for long periods of time[,]" which Petitioner "related to a[n] issue she had when delivering [G.A.]"  *Id.* at 17.  Petitioner reported that G.A. "complain[ed] of leg pain," but the doctor wrote that G.A. "climb[ed] and r[a]n without issues."  *Id.* at 20.  The doctor recommended a physical therapy ("PT") evaluation and ordered hip and leg x-rays because he noticed that G.A. was "walking with [a] slight limp" and "drag[ing] [her] right leg a little bit."  *Id.* at 21.  At this visit, G.A. received the relevant flu vaccine in her right vastus lateralis.[6]  *Id.* at 16.  G.A. underwent x-rays on December 23, 2014, which were "normal" and showed "no fracture[,] [n]o marked soft tissue swelling[, n]o foreign body[, and n]o destructive lesion . . . .."  Pet'r's Ex. 23 at 13.

G.A. presented for a PT evaluation on February 3, 2015.  Pet'r's Ex. 1 at 22.  During this visit, Petitioner "expressed some concerns about [G.A.'s] limping when walking."  *Id.*  The

---

[6] The vastus lateralis "is located on the side of the thigh." VASTUS LATERALIS, available at
https://www.healthline.com/human-body-maps/vastus-lateralis-muscle#1 (last visited Apr. 3, 2020).

physical therapist wrote that G.A. "[w]alk[ed] 200 feet and r[a]n[] 100 feet, . . . [w]alk[ed] backwards, [j]ump[ed] on the floor, with feet together, [all] without support, with adult supervision[, and s]how[ed] no walking deviations at this time." *Id.* The physical therapist concluded that G.A. was "in no need for any further PT intervention." *Id.*

On April 29, 2015, G.A. presented for her "[two-year-old] well-child exam and follow up on leg pain/sore[ness]." Pet'r's Ex. 5 at 6. Petitioner reported that G.A. had been experiencing "leg pain since shots." *Id.* at 7. G.A. also had developed a "bruise and now there is a knot in her leg. [Since the injection, the] knot has gotten smaller." *Id.* Petitioner reported that G.A. was "able to walk and run" at this visit. *Id.* The doctor recorded Petitioner's account that G.A "f[ell] a lot when running[]" and had been attending "[PT] . . . once weekly[ but had shown] no improvement[.]" *Id.* Under the assessment section of this record, the doctor wrote that Petitioner "report[ed a] lump on [G.A.'s] leg after administration of vaccines during last visit." *Id.* at 9. An examination showed "erythematous satellite lesions in [genitourinary] area; scarring with mild hyperpigmentation on right thigh[; and two] small palpable superficial nodule[s]." *Id.* at 10. The doctor also noted "[range of motion] intact, normal tone, strength 5/5, moves extremities equally, [and] no limp." *Id.* The doctor determined that the nodules were "likely scar tissue based on exam and history[]" and did not prescribe any treatment, opting instead to "continue to monitor." *Id.*

G.A. presented to the emergency room on July 1, 2015, for a head injury she sustained when she "was throwing a temper tantrum at home . . . and threw [her]self on [the] floor hitting the back of her head." Pet'r's Ex. 22 at 27. Petitioner did not complain of any issues with G.A.'s legs or pain associated with walking. *See id.* at 28. Doctors noted that G.A. "move[d] all four [extremities]" and was "running around [the] exam room." *Id.*

On December 8, 2015, G.A. presented for her two-and-a-half-year-old well-child examination. Pet'r's Ex. 19 at 15. Petitioner reported that G.A. "had an injection at [a] previous clinic and subsequent swelling and pain." *Id.* at 16. Petitioner also stated that G.A. could not walk and "sometimes gets frustrated and 'falls out' . . . ." *Id.* The doctor, however, noted that G.A. was "climb[ing], jump[ing], and walk[ing] around the clinic" during the visit. *Id.* Petitioner also "insist[ed] that [G.A.] ha[d] a bone infection and a permanent disability." *Id.* On physical examination, G.A. had "no rashes or lesions" on her skin. *Id.* at 19.

Petitioner brought G.A. for an occupational therapy evaluation on February 16, 2016. Pet'r's Ex. 1 at 19–20. Petitioner expressed a concern regarding a knot in G.A.'s leg "from a shot." *Id.* at 19. The evaluator wrote that G.A. was "able to sit, stand, transition, walk, [and] run independently . . .." *Id.* The evaluator noted a need for further intervention to correct delays in G.A.'s fine motor skill development, self-help skills development, and sensory processing skills development, but did not note any delay in gross motor skill development. *See id.*

On June 16, 2016, G.A. presented for an "ortho referral for genu valgus[7] . . .." Pet'r's Ex. 19 at 12. Petitioner reported a concern regarding G.A.'s "gait" and stated that "after receiving [an immunization] . . . [G.A.] developed a bump on her right leg and it affected her walking." *Id.*

---

[7] Genu valgum is "a deformity in which the knees are abnormally close together and the space between the ankles is increased." *Dorland's* at 771.

at 13. Petitioner reported that G.A. "received PT . . . but still [complains of] pain from time to time." *Id.* The doctor noted that G.A. was "walking on medial edges of feet[,]" and the doctor referred G.A. to an orthopedist. *Id.* The rest of the medical record shows an uneventful follow up to the orthopedist and a few uneventful doctors' visits. *See* Pet'r's Exs. 34–38.

### b. Petitioner's Affidavit

Petitioner submitted an affidavit on June 5, 2017. Pet'r's Ex. 32. Petitioner stated that G.A. had problems at birth, which "resulted in her having some pain and an occasional slight limp in her right leg." *Id.* at 1. However, Petitioner noted that as G.A. continued to grow, "the only time she really complained was when she was walking or running for a long time and got too tired." *Id.*

Petitioner stated that when G.A. was given the vaccination at issue, the "nurse who gave the shot . . . . jammed the shot[] in harder than [she] remember[ed] any children's shot[] being given. G.A. screamed, and it took a long time to calm her down." *Id.* Petitioner continued, "G.A.'s right thigh swelled up and became hot to the touch. There was a black spot where the shot was given, and a big lump developed around it." *Id.* Petitioner reported that "G.A. complained that it was very painful, and she kept trying to scratch it." *Id.* Petitioner stated that she called the doctor's office regarding "the swelling and the pain and was told to alternate ice and heat and give [G.A.] Tylenol." *Id.* Petitioner also stated that G.A. "kept complaining of pain, and this was different than the pain she described before the shot that would only occur after walking too much." *Id.*

Petitioner wrote that she explained G.A.'s symptoms to the doctor at G.A.'s well-child visit on April 29, 2015, but that the doctor "seemed to want to minimize what was going on . . .." *Id.* Petitioner indicated that "the knot on [G.A.'s] leg was not as big as it had been, [but] it was still pretty good sized." *Id.* Petitioner concluded her affidavit by stating that "G.A. has continued to experience some pain in her leg and still has a limp. She also still has a scar where the shot was given." *Id.*

### c. Letter from Dr. Penny White, M.D.

Petitioner filed a letter from Dr. Penny White on August 31, 2018. Pet'r's Ex. 33. Dr. White wrote her letter in response to the questions drafted by the parties about a possible cause for scarring on G.A.'s right thigh. She wrote that she "saw GA for the first time in May of 2018[,]" and noted that this was the only time she had "formally" seen G.A.; although, she had answered questions from Petitioner on multiple occasions. *Id.* Dr. White wrote that G.A. "ha[d] a lichenified, scar-like area on her right thigh[]" that measured "about 1 by 1.5 centimeters." *Id.* Although it was "hypopigmented[,]" she "doubt[ed] that the patch of lichenification . . . could be caused solely by the administration of a single vaccine." *Id.* The vaccine was administered in G.A.'s right vastus lateralis, however, Dr. White wrote that "[t]he scarring [was] more located over the right vastus intermedius.[8] There was no scaring over the lateralis area." *Id.* Dr. White

---

[8] The vastus intermedius "is located along the upper portion of the femur, which is also known as the thighbone. This muscle covers the front part of the femur and the side of the femur." Vastus

opined that "[t]he scar could be from longstanding eczema [because t]he irritation and itching can cause a scar-like lichenfied picture." *Id.* Dr. White concluded that "the scarring [was] from an allergic reaction like . . . [those] see[n] in chronic eczema." *Id.*

## III.   Legal Standard

Under the Vaccine Act, an award of reasonable attorneys' fees and costs is presumed where a petition for compensation is granted. Where compensation is denied, or a petition is dismissed, as it was in this case, a special master may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa–15(e)(1); *see also Sebelius v. Cloer*, 569 U.S. 369, 376 (2013).

### a.   Good Faith Standard

"Good faith" is a subjective standard. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). Petitioners act in "good faith" if they hold an honest belief that a vaccine injury occurred. *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, petitioners are "entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (noting that in the absence of evidence of bad faith, the special master was justified in presuming the existence of good faith). Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma v. Sec'y of Health and Human Servs.*, No. 99-3277, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1992)); *Turner*, 2007 WL 4410030, at *5. Respondent does not contest that this petition was filed in good faith, *see* Resp't's Resp., and I find that the good faith standard is met in this case.

### b.   Reasonable Basis

Respondent does, however, contest the reasonable basis for this petition. *Id.* A petitioner can receive fees and costs award even if her claim fails, but to do so she must demonstrate the claim's reasonable basis through some objective evidentiary showing. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017); *see also Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)). "Reasonable basis" is not explicitly defined in the Vaccine Act or Rules. Deciding whether a claim has a reasonable basis "is within the discretion of the Special Master . . .." *Simmons v. Sec'y of Health and Human Servs.*, 128 Fed. Cl. 579, 582 (2016), *aff'd*, 875 F.3d 632 (Fed. Cir. 2017) (internal citations omitted). The standard for reasonable basis is lesser (and inherently easier to satisfy) than the preponderant standard applied when

---

INTERMEDIUS, available at https://www.healthline.com/human-body-maps/vastus-intermedius#1 (last visited Apr. 3, 2020).

assessing entitlement, as cases with reasonable basis (because they have objective proof supporting the claim) can nevertheless still fail to establish causation-in-fact. *Braun v. Sec'y of Health & Human Servs.*, 144 Fed. Cl. 72, 77 (2019).

In determining whether a claim has a reasonable basis, special masters apply a totality of the circumstances test, considering factors such as "the factual basis, the medical support, and jurisdictional issues." *Chuisano*, 116 Fed.Cl. at 288 (citation omitted). Thus, petitioners must offer more than an unsupported assertion that a vaccine caused the injury alleged. *See, e.g.*, *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *5 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303–04 (2011); *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). Petitioners must "affirmatively dsemonstrate [the] reasonable basis" of their claim through some objective evidentiary showing. *McKellar*, 101 Fed. Cl. at 305. Such a showing "must, at a minimum, be supported by medical records or medical opinion." *Everett v. Sec'y of Health and Human Servs.*, No. 91-1115V, 1992 WL 35863, at *2 (Fed. Cl. Spec. Mstr. Feb 7, 1992).

In *Simmons*, The Federal Circuit stated that the reasonable basis inquiry is objective and unrelated to the conduct of Petitioner's counsel prior to filing a claim. The Court consequently affirmed the lower court's holding that the claim lacked reasonable basis based on the insufficiency of the petitioner's medical records and proof of vaccination at the time the petition was filed. *Simmons*, 875 F.3d at 636. In light of *Simmons*, the Court of Federal Claims determined, "[I]n deciding reasonable basis[,] the Special Master needs to focus on the requirements for the petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery . . . [u]nder the objective standard articulated in *Simmons*, the Special Master should have limited her review to the claim alleged in the petition to determine if it was feasible based on the materials submitted." *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018). When evaluating a case's reasonable basis, petitioner's "burden has been satisfied ... where a petitioner has submitted a sworn statement, medical records, and [a] VAERS report which show that recovery is feasible." *Id.* Additionally, a special master may consider "the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim." *Cottingham v. Sec'y of Health & Human Servs.*, 134 Fed. Cl. 567, 574 (2017), *appeal docketed*, No. 19-1596 (Fed. Cir. Feb. 26, 2019).

## IV.    Arguments

### a.    Respondent's Argument

On September 6, 2019, Respondent filed a response to Petitioner's motion for attorneys' fees and costs. *See* Resp't's Resp. Respondent opposes Petitioner's motion, arguing that "[a]ny award of fees and costs is inappropriate in this case, because the petition lacked a reasonable basis . . ." *Id.* at 1. Further, Respondent wrote that "the Court should deny [P]etitioner's application *in toto*" because the objective evidence submitted did not demonstrate the case's feasibility. *Id.* (original emphasis).

First, Respondent argues that Petitioner's entire claim rested solely on Petitioner's word

that G.A. suffered a vaccine injury.  Respondent states that the "record, at best, establishes less than five months of sequelae." *Id.* at 11 (quoting Decision).  Respondent points out that I found Petitioner had not established G.A.'s six-month injury duration requirement when dismissing the case.  Respondent goes on to write, "[e]ven if [P]etitioner could establish that G.A. suffered six months of residual symptoms from some alleged injury, there are absolutely no medical records that document that her vaccine actually caused any type of injury that would result in scarring." *Id.* at 10.  Thus, Respondent argues that there was not enough medical support filed with this claim to support a finding of reasonable basis.  *Id.*

Respondent wrote that many of Petitioner's claims were shown by her own medical records to be inconsistent.  *Id.* at 9.  For example, Petitioner argued that she was unable to obtain medical records because of Medicaid difficulties; however, the Medicaid lien submitted by Petitioner showed all services provided to G.A.  *Id.* at 9–10 n.6.

Finally, Respondent argues that by not thoroughly investigating the claim, Petitioner's counsel assumed the risk of not being compensated for attorneys' fees and costs if counsel was unable to produce documentation to show a reasonable basis for filing.  *Id.* at 11; *Everett*, 1992 WL 35863, at *2.  Even though petitioners are allowed to supplement their petitions to meet statutory requirements, Respondent argues that "it would not be equitable or just to reward counsel for waiting until after the petition was filed to finish investigating the claim."  *Id.* at 11. Respondent states that "an absence of any observable symptoms on G.A.'s thigh during the months following her vaccination should have been immediately clear to [P]etitioner's counsel, as records documenting G.A.'s care immediately following her vaccination were filed shortly after the Petition."  *Id.*; *see generally* Pet'r's Exs. 1, 5.

### b. Petitioner's Argument

Petitioner filed her reply on September 14, 2019.  *See* Pet'r's Reply.  Petitioner's counsel argues that this was a "challenging case" because "obtaining cooperation from Petitioner's [various] medical providers was exceedingly difficult."  Additionally, Petitioner's counsel added that there were "continuing challenges in communicating with Petitioner."  *Id.* at 1.  Petitioner's counsel states that these challenges should not preclude him from obtaining his fees and costs.

Petitioner's counsel states that obtaining all the medical records, a proper primary care doctor for G.A., and the letter from Dr. White were "labor-intensive act[s]."  *Id.* at 1–2.  Further, Petitioner's counsel argues that I should find good faith and reasonable basis because I "*did not* find that Petitioner had not filed in good faith or was without reasonable basis [in my decision dismissing this case], *nor*, did Respondent raise reasonable basis in their Motion to Dismiss" *Id.* at 2 (original emphasis).  Finally, Petitioner writes that "Counsel acted appropriately, reasonably, and judiciously in his representations in the context of the facts and challenges of the case . . .." *Id.*

### V.   Analysis

### a. The Objective Medical Records and Medical Opinions Submitted Did Not Demonstrate the Claim's Feasibility

After reviewing the entire record, I find that Petitioner did not have a reasonable basis to file this claim. The feasibility of a claim must be based on the objective evidence submitted, and Petitioner incorrectly argues the standard of reasonable basis. It is not the difficulty of how the case proceeds which determines reasonable basis, as Petitioner suggests. Rather, it is based on the filing of objective evidence which shows the claim's feasibility. The Act requires that petitions are to be accompanied by "supporting documentation" establishing entitlement, such as "vaccination records associated with the vaccine allegedly causing the injury, [and] pre- and post-injury physician or clinic records." §§11(c)(1) and (2). The requirement that reasonable basis is established by evidence means that some supporting documentation of a claim must always be offered if the claim is to be viable. Petitioner had the opportunity to fulfill the statutory prerequisites for filing a petition by producing evidence to show that G.A. had the alleged injury any time before this case was dismissed. *See Chuisano*, 116 Fed. Cl. at 287 (finding that "the reasonable basis inquiry is broad enough to encompass any material submitted in support of the claim at any time in the proceeding, whether with the petition or later.").

In support of her claim, Petitioner submitted medical records from G.A.'s fifteen-month to two-and-a-half-year well-child visits. However, before G.A.'s December 16, 2014 vaccination in her right leg, the medical records show that Petitioner had three primary complaints concerning G.A.: dermatological issues, developmental issues, and leg pain. G.A.'s dermatological issues were recorded as diaper rashes, "bug bites," dry skin on the right thigh, and eczema. *See* Pet'r's Exs. 5, 12. Second, the records indicate that some of G.A.'s physicians had concerns about G.A.'s development. An evaluator noted that G.A. had a thirty-nine percent delay in her fine motor skill development and a twenty-seven percent delay in her gross motor skill development. Pet'r's Ex. 1 at 3. Third, Petitioner indicated that G.A. complained of some pain in the legs on the date of the vaccination, which Petitioner thought was "related to a[n] issue she had when delivering [G.A.]." Pet'r's Ex. 5 at 17. Immediately after receiving the vaccination, there was no indication of an adverse reaction nor did the x-ray performed seven days post vaccination show any swelling, lesions, or fractures. Pet'r's Ex. 5 at 15; Pet'r's Ex. 23 at 13. The following months after the vaccination show that G.A. continued to present to various doctors complaining of the same medical issues that she complained about prior to the vaccination. *See* Pet'r's Ex. 5, 23. When G.A. was evaluated for her dermatological issues, developmental issues, and leg pain, the medical records show that G.A. was able to walk, run, and climb with no signs of difficulties. *See* Pet'r's Exs. 1, 5, 12, 23. Petitioner's medical records do not objectively show an injury related to the vaccination.

Respondent correctly argues that there is insufficient evidence to show an injury which lasted longer than six months. Overall, the medical records show continuous symptoms of leg pain, developmental concerns, and skin irritation that started before the vaccination and continued well past the vaccination. Other than Petitioner's word to treaters that G.A. experienced novel pain that started post vaccination, the medical records do not indicate that the vaccine played a role in any of G.A.'s medical concerns. In a letter submitted by Petitioner, G.A.'s own treating physician, Dr. White, stated that the vaccine did not play a role in G.A.'s medical issues. Pet'r's Ex. 33. Dr. White "doubt[ed]" that the patch of lichenification . . . could be caused solely by the administration of a single vaccine." *Id.* Dr. White opined that "[t]he scar could be from longstanding eczema [because t]he irritation and itching can cause a scar-like lichenfied picture." *Id.* Dr. White concluded that "the scarring [was] from an allergic reaction like . . . [those] see[n] in chronic eczema." *Id.*

10

The consistency of the medical records and medical opinions before and after G.A.'s vaccination does not demonstrate that this claim was feasible either at filing or after the evidence was submitted.  It should have been clear to an attorney with as much experience in the Program as Mr. Shoemaker that there was not enough affirmative, objective evidence to sustain this claim. Considering there was no medical opinion or record that related the vaccination to the injury, and there was no change in G.A.'s medical concerns after vaccination, I cannot find that this case was feasible with the evidence submitted.  Therefore, I find that this claim lacked a reasonable basis.

### b.  The Claim Did Not Present Anything Novel or Complex About This Case

Petitioner claims that the vaccine at issue caused G.A. to "experience[] an injection site reaction that resulted in pain, swelling, itching, erythema, induration and ecchymosis, as well as a limp . . . [and] scarring[.]"  Am. Pet. at 3–4.  A "simple scarring" case, as Petitioner's counsel describes it, does not pose a novel or complex theory.  *See* Pet'r's Reply at 1.  This type of alleged condition does not present a need for specialized experts or medical literature.  Thus, I find that this case did not present anything new or complex for me to consider.

Lastly, although the statute of limitations is not the determining factor for evaluating a claim, it is noteworthy that in this case, filing occurred almost a year before the deadline.  It is clear that Petitioner's counsel had ample time to investigate the claim prior to filing.

## VI.    Conclusion

I find that the Petitioner has not alleged facts and submitted evidence to demonstrate a reasonable basis for her claim.  To find reasonable basis, I need more than Petitioner's assertion that a vaccine caused the alleged injury, unsupported by medical records or medical opinions, to award fees and costs.  Here, a review prior to filing would have shown that this was not a feasible claim without more objective evidence.  Therefore, I hereby **DENY** Petitioner's motion for attorney's fees and costs.  In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[9]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.